ELIZABETH A. FALCONE, CA Bar No. 219084
elizabeth.falcone@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500
Portland, OR  97201
Telephone:	503-552-2140
Facsimile:	503-224-4518

MATTHEW J. GAGNON, *pro hac vice*, application pending
matthew.gagnon@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
155 N. Wacker Drive
Suite 4300
Chicago, IL  60606
Telephone:	312-558-1220
Facsimile:	312-807-3619

Attorneys for Defendants
KINDERCARE EDUCATION LLC and
LEARNING CENTERS LLC

*[Additional Counsel on following page]*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIMYA ATMORE, individually, and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>        v.<br><br>KINDERCARE EDUCATION LLC, a Delaware limited liability company; KINDERCARE LEARNING CENTERS LLC, a Delaware limited liability company; and DOES 1 through 50, inclusive,<br><br>                Defendants. | Case No. 5:25-cv-08851<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446 AND 1453**<br><br>[*Filed concurrently with Civil Cover Sheet; Certification of Interested Parties and Disclosure Statement; Notice of Pendency of Other Cases; Declarations of Zach Lewis, Omar M. Aniff, and Jacob Kinde in Support of Removal*]<br><br>Complaint Filed:   May 29, 2025<br>Trial Date:              None<br>District Judge:      Hon.<br>Courtroom |

OMAR M. ANIFF, CA Bar No. 315446
omar.aniff@ogletree.com
Haik Kolsuzyan, CA Bar No. 358541
haik.kolsuzyan@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA  90071
Telephone:     213-239-9800
Facsimile:     213-239-9045

Attorneys for Defendants
KINDERCARE EDUCATION LLC and
LEARNING CENTERS LLC

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF CHRIMYA ATMORE AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT defendants KinderCare Education LLC and KinderCare Learning Centers LLC (together, "Defendants"), by and through their undersigned counsel, hereby remove the above-entitled action from the Superior Court of the State of California for the County of Santa Clara to the United States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453. In support of such removal, Defendant states as follows:

**I.    THE STATE COURT ACTION**

1. On May 29, 2025, plaintiff Chrimya Atmore ("Plaintiff") filed a putative Class Action Complaint ("Complaint") in the Superior Court of the State of California, County of Santa Clara, entitled *Chrimya Atmore v. KinderCare Education, LLC, et al.* which was assigned case number 25CV466993 (the "State Court Action"). The Complaint asserts claims for: (1) Failure to Pay All Minimum Wages; (2) Failure To Pay Overtime Wages; (3) Failure to Provide Meal Periods and Pay Missed Meal Period Premiums; (4) Failure to Provide Rest Periods and Pay Missed Rest Period Premiums; (5) Failure to Pay Wages Timely A Termination; (6) Failure to Provide Accurate Itemized Wage Statements; (7) Failure to Indemnify All Necessary Business Expenses; (8) Failure to Produce Requested Payroll Employment Records; and (9) Unfair Business Practices in violation of California's Business and Professions Code Section 17200, *et seq*.

2. On July 2, 2025, Plaintiff personally served the Class Action Complaint as well as other documents filed in the State Court Action on Defendants' agent for service of process. Declaration of Omar M. Aniff ("Aniff Decl.") ¶ 2. A true and correct copy of the Complaint is attached as **Exhibit A** to this Notice of Removal.

3. As further required by 28 U.S.C. § 1446(a), Defendants hereby provide this Court with copies of all process, pleadings, and orders received by Defendants in the State Court Action. True and correct copies of these documents are attached as **Exhibit B** to this Notice of Removal. Defendants have not been served with any pleadings, process, or orders besides those attached. Aniff Decl., ¶ 3.

4.    Plaintiff has not yet identified any of the fictitious "Doe" defendants identified in the Complaint, and the citizenship of "Doe" defendants is disregarded for the purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

## II.    JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT

5.    This action is one over which this Court has original jurisdiction under the Class Action Fairness Act ("CAFA") and is one which may be removed by Defendants pursuant to 28 U.S.C. §§ 1441 and 1453, because the number of potential class members exceeds 100, the parties are citizens of different states, and the amount in controversy exceeds the aggregate value of $5,000,000. *See* 28 U.S.C. §§ 1332(d)(2) and (d)(6).

### A.    The Size of the Putative Class Exceeds 100

6.    In the Complaint, Plaintiff defines the proposed class as: "All persons who worked for any Defendant in California as an hourly-paid or non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action [May 29, 2021] and ending when notice to the Class is sent." Compl. ¶ 25.

7.    Defendants' employment records show that there are least thirteen thousand current and former employees who fall within Plaintiff's proposed class. Specifically, from August 15, 2021 to July 19, 2025 ("Applicable Period")[1] Defendant KinderCare Education LLC employed at least 12,995 non-exempt hourly employees in California. Declaration of Zach Lewis ("Lewis Decl.") ¶ 5.

### B.    The Parties Are Diverse

8.    <u>Citizenship of Defendant</u>. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *Id*. The United States Supreme Court established the proper test for determining a corporation's principal place of business for purposes of diversity jurisdiction in *The

---

[1] Although the class action is alleged to date back to May 29, 2021, Defendants rely on a shorter period starting several months after on August 15, 2021. Defendants reserve their right to expand the relevant period through May 29, 2021 as alleged by the Complaint. Defendants further reserve the right to supplement this Notice of Removal to include estimates of the additional amounts in controversy based on the other allegations contained in the Complaint.

*Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010). The Supreme Court concluded that the "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Id*. at 1184. The Court further clarified that the principal place of business is the place where the corporation "maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination." *Id.*

9. At all times on or after the date this action was filed, Defendants have been citizens of the states of Delaware and Oregon. Defendants have their principal places of business in Oregon, as that is the location of their headquarters and where they centrally manage their executive and administrative operations. Declaration of Jacob Kinde ("Kinde Decl."), ¶ 5. In addition, Defendants were formed in the State of Delaware. *Id*. ¶ 3. Defendants were neither formed in California, nor do they have their principal places of business in California. *Id*. ¶¶ 3, 5. Accordingly, for purposes of determining diversity, Defendants are regarded as citizens of Oregon and Delaware, and not as citizens of California.[2]

10. <u>Citizenship of Plaintiff and putative class members</u>. Plaintiff is a citizen of the State of California. Compl. ¶ 7.

11. Members of the proposed class, who by definition are or were employed in California, are presumed to be primarily citizens of the State of California. Compl. ¶ 25; *see, e.g., Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986) ("place of employment" is an important factor weighing in favor of citizenship).

12. Accordingly, the minimal diversity of citizenship requirements under 28 U.S.C. § 1332(d)(2) are met because Defendants are citizens of Oregon and Delaware while Plaintiff, a putative class member, is a citizen of California.

**C.   The Amount in Controversy Exceeds an Aggregate of $5,000,000**

13. To remove a class action under CAFA, the amount in controversy must exceed $5,000,000." *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). To do so,

---

[2] The citizenship of fictitiously named "Doe" defendants is disregarded for purposes of removal. 28 U.S.C. § 1441(a); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).

the removing defendant must "produce underlying facts showing only that it is *more likely than not* that the amount in controversy exceeds $5,000,000.00, assuming the truth of the allegations plead in the Complaint." *Muniz v. Pilot Travel Ctrs. LLC*, No. CIV. S-07-0325 FCD EFB, 2007 WL 1302504, at *5 (E.D. Cal. May 1, 2007) (emphasis in original).

14. In considering the evidence submitted by the removing defendant, the Court must "look beyond the complaint to determine whether the putative class action meets the [amount in controversy] requirements," adding "the potential claims of the absent class members" and attorneys' fees. *Rodriguez, supra*, 728 F.3d at 981 (citing *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 185 L.Ed. 2d 439 (2013)); *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 705 (9th Cir. 2007). Furthermore, "[i]n considering whether the amount in controversy is clear from the face of the complaint, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Altamirano v. Shaw Indus., Inc.*, C-13-0939 EMC, 2013 WL 2950600, at *4 (N.D. Cal. June 14, 2013) (citing *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)); *see also Muniz, supra*, 2007 WL 1302504, at *3.

15. While Defendants deny the validity of Plaintiff's claims and requests for relief and do not concede in any way that the allegations in the Complaint are accurate, that Plaintiff's claims are amenable to class-wide treatment, or that Plaintiff or any of the putative class members are entitled to any of the requested relief, the allegations in the Complaint show it is more likely than not that the amount in controversy exceeds the jurisdictional minimum. *See Guglielmino, supra*, 506 F.3d at 700.

16. As described further below, as well as in the concurrently filed declaration from a third-party data analyst,[3] the amount in controversy exceeds the jurisdictional minimum of

---

[3] For purposes of effecting removal pursuant to 28 U.S.C. § 1332(d), declarations from defendant and their counsel constitute sufficient evidence to establish the amount in controversy. *See, e.g., Muniz, supra*, 2007 WL 1302504, at *2, *5 (relying on the evidence submitted by the defendant in the form of a declaration from its employee relations manager, which "set forth the underlying facts needed to calculate the amount in controversy," and a declaration from its counsel, which calculated the amount in controversy based on the underlying facts and in light of the laws governing the plaintiff's claims, and finding that the defendant had shown that "it is more likely than not that the jurisdictional threshold of $5,000,000.00 is met"); *Jasso v. Money Mart Express, Inc.*, No. 11-CV-

$5,000,000. If necessary, Defendants could and would supplement this Notice of Removal to include estimates of the additional amounts in controversy based on the other allegations contained in the Complaint and pertaining to the longer relevant period.

### 1. Defendants' Calculation of the Amount in Controversy

17. Defendants deny all of Plaintiff's allegations and do not waive any arguments or concede the legitimacy of any factual or legal contentions by virtue of this Removal. Regardless, for purposes of removal, in evaluating the amount in controversy the Parties must assume all of Plaintiff's allegations are true and legally supported. *Green v. Harley-Davidson, Inc.*, 965 F.3d 767 (9th Cir. 2020).

18. In determining the amount in controversy to support their Notice of Removal, Defendants rely on both employment data and conservative violation rates supported by the facts alleged by Plaintiff in her Complaint relating to alleged claims for failure to provide meal periods or premium payments in lieu thereof and failure to timely pay wages upon separation of employment. *See* Compl., ¶¶ 51-54, 59-65; Prayer For Relief ¶¶ 16-20, 26-30; *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) (holding that when an award of attorneys' fees is authorized by statute, the request for attorneys' fees is properly considered in determining the amount in controversy for removal purposes.).

#### a. The Amount Placed in Controversy By Plaintiff's Meal Period Claim Exceeds $6,141,005.

19. In her Third Cause of Action, Plaintiff alleges that "Defendants, at times, failed to provide Plaintiff and some, but not necessarily all of the Class with both meal periods as required by California law." Compl., ¶ 53.

20. Plaintiff further alleges, "Defendants required Plaintiff and some of, but not

---

5500 YGR, 2012 WL 699465, at *4 (N. D. Cal. Mar. 1, 2012) (finding there was "adequate foundation" for the declaration submitted by the defendant's human resources director regarding "the numbers of employees, payperiods *[sic]* and average rates of pay during the applicable limitations periods," which was derived from a compilation of "information that is kept in the normal course of business," and relying on the declaration to find that the defendant had met its burden to establish the amount in controversy in excess of CAFA's jurisdictional threshold).

1  necessarily all of, the Class to work in excess of five consecutive hours a day without providing a
2  30-minute, uninterrupted, and duty-free meal period for every five hours of work, or without
3  compensating Plaintiff and some of, but not necessarily all of, the Class for all missed meal periods
4  that were not provided by the end of the fifth hour of work or tenth hour of work." *Id.* at ¶ 16.

5      21.    Plaintiff further alleges that "Plaintiff and some of, but not necessarily all of, the Class
6  are entitled to be paid one hour of additional wages for each workday they were not provided with
7  all required meal period(s), plus interest thereon." *Id*. at ¶ 54

8      22.    Under California law, employees who are denied compliant meal are entitled to one
9  hour of premium pay for each day that a meal period is missed.  *See Marlo v. United Parcel Serv.,*
10 *Inc.*, No. CV 03-04336 DDP (RZx), 2009 WL 1258491, at *7 (C.D. Cal. May 5, 2009).

11     23.    Although Plaintiff "was free to propose [a violation] rate" and "also free to use some
12 more specific phrase than 'at times' when drafting the complaint," Plaintiff has not provided any
13 allegations that could be read to reasonably constrain the potential violation rates for purposes of
14 determining the amount placed in controversy for removal purposes. *See Perez v. Rose Hills Co.*,
15 131 F.4th 804, 810 (9th Cir. 2025) (approving violation rate of one hour of unpaid straight time, one
16 hour of overtime pay, one hour of meal period premiums, and one hour of rest period premiums per
17 workweek per putative class employee where plaintiff used "at times" language in the Complaint).
18 Thus, Defendants may rely on reasonable assumed violation rates consistent with the Complaint.

19     24.    When determining the amount placed in controversy by a plaintiff's allegations that
20 employees were "at times" not provided meal periods, a 20% violation rate is both reasonable and
21 more conservative than the rate approved by the Ninth Circuit in *Perez*, which allowed for one meal
22 period premium per week.  *See Perez, supra,* 131 F.4th at 810; *see e.g., McGill v. Walgreens Co.*,
23 No. EDCV 25-1422-KK-SPx, 2025 WL 2413970, at *3-4 (C.D. Cal. Aug. 20, 2025) (approving a
24 20% violation rate for meal and rest period claims where complaint used "at times" limiting language
25 for violations); *Jennings v. Northrop Grumman Corp.*, No. 24-cv-7212-FMO-Ex 2025 WL 1940576,
26 at *4 (C.D. Cal. July 14, 2025) (finding a 25% waiting time penalty violation rate consistent with "at
27 times"); *Duncan v. Baxalta US Inc.*, No. 24-cv-09388-RGK-ASx, 2025 WL 40482, at *2 (C.D. Cal.
28 Jan. 7, 2025) (finding a 20% meal and rest period violation rate consistent with "at times"); *Ross v.*

*Tata Consultancy Servs. Ltd.*, No. 24-cv-0798-FMO-SSCx, 2024 WL 4122273, at *3 (C.D. Cal. Sept. 9, 2024) (same); *see also Bonetti v. TriStruX LLC*, No. 24-cv-01319-LB, 2024 WL 3225905 (N.D. Cal. June 27, 2024) (same).

25. Based on a review of Defendants' business records, during the Applicable Period, the putative class members worked an aggregate of 2,606,539 shifts that exceeded six hours in length[4] and received a minimum hourly rate of at least $11.78.[5]  Lewis Decl., ¶¶ 7-8

26. Based on analysis using a conservative 20% violation rate, Defendants' calculation of Plaintiff's claim for failure to provide legally compliant meal periods puts **at least $6,141,005.88 in controversy**.  The computation of the amount in controversy is based on conservative calculations that during the Applicable Period, putative class members worked 2,606,539 shifts that exceeded six hours in length, that there was a 20% meal period violation rate, and conservatively each putative class member earned the minimum regular rate of $11.78 per hour.  Lewis Decl., ¶¶ 7-8.

27. Consequently, the amount placed in controversy by the Meal Period Claim is **$6,141,005.88** ($11.78 x 2,606,539 shifts x 0.2).

### 2. The Amount Placed in Controversy By Plaintiff's Section 203 Claim Exceeds $3,506,025.60.

28. Plaintiff's Fifth Cause of Action for "Waiting Time Penalties" alleges that, "Defendants, at times, failed, and continue to fail, to pay some of, but not necessarily all of, the terminated Class Members, without abatement, all wages required to be paid by California Labor Code §§ 201 and 202 either at the time of discharge, or within seventy-two (72) hours of their leaving

---

[4] "An employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee." Labor Code § 512(a).  For purposes of this removal, Defendants conservatively estimated that mutual waivers were in place for all putative class members during the Applicable Period, and thus considered only at shifts exceeding six hours. Defendants reserve the right to expand the amount in controversy to include meal period violations for shifts exceeding five hours in length as supported by the evidence in opposition to any remand motion.

[5] Putative class members' average rate of pay during the Applicable Period was $20.80. Lewis Decl., ¶ 6.  For purposes of these calculations, however, Defendants have conservatively used the lowest minimum wage rate of $11.78 across the board.  *See id.* at ¶ 7.  Defendants reserve the right to use higher hourly rates as supported by the evidence in opposition to any remand motion.

Defendants' employ." Compl., ¶ 61.

29. Plaintiff claims that "Defendants' failure to timely pay Plaintiff's final wages when Plaintiff's employment terminated was not a single, isolated incident, but was instead consistent with Defendants' practices that applied, at times, to Plaintiff and some of, but not necessarily all of, the Class." Compl., ¶ 18.

30. Plaintiff further alleges "Defendants, at times, willfully failed and refused to timely pay Plaintiff and some of, but not necessarily all of, the Class all final wages due at their termination of employment." *Id*.

31. Plaintiff further claims that "the Class is entitled to recover from Defendants their additionally accruing wages for each day they were not paid, at their regular hourly rate of pay, up to thirty (30) days maximum." *Id*. ¶ 64.

32. Under Labor Code section 203, "[i]f an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid . . . but the wages shall not continue for more than 30 days." Lab. Code § 203(a). A three-year statutory period applies to Plaintiff's claim for waiting time penalties. *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1398 (2010).

33. Here, Plaintiff alleges that she and putative class members suffered Labor Code violations for alleged unpaid minimum wages, straight time, and overtime wages, non-compliant meal periods and failure to pay meal period premiums in lieu thereof, and failure to authorize and permit rest periods and failure to pay rest period premiums in lieu thereof. Compl., ¶¶ 13-17, 29, 34, 46, 54, 58. Plaintiff does not allege that these claims solely affected any subclass, or that these claims were limited to any particular sub-group of putative class members. *See generally* Compl. Then with respect to her Labor Code section 203 claim, Plaintiff alleges that wage statements violations were both "willful and intentional," "not a single, isolated incident," and were "consistent with Defendants' practices." *Id*. at ¶ 18. As such, it is reasonable to conclude that all former employees were terminated while being owed at least *some* amount of money – which, in turn, would trigger Plaintiff's claim for 30-days of continued wages for every former employee at their daily wage rates. *See Cavada v. Inter-Cont'l Hotel Grp., Inc.*, No. 19cv1675-GPC(BLM), 2019 WL 5677846, at * 8-

9 (S.D. Cal. Nov. 1, 2019) (finding 100% violation rate reasonable because waiting time penalties were based on one missed meal and one missed rest break per putative class members); *Quintana v. Claire's Stores, Inc.*, No. 13-0368-PSG, 2013 WL 1736671, at *6 (N.D. Cal. Apr. 22, 2013) (finding that the defendant's waiting time penalties calculation was "supported by Plaintiff's allegations" and was "a reasonable estimate of the potential value of the claims" where the complaint alleged that the each putative class member "potentially suffered at least one violation that continues to be unpaid"); *Mackall v. Healthsource Global Staffing, Inc.*, No. 16-cv-03810-WHO, 2016 WL 4579099, at *4-6 (N.D. Cal. Sept. 2, 2016) (holding that a 100% violation rate appropriate, given allegations that the defendant "consistently maintained and enforced unlawful policies" and failed to pay overtime that was "regularly worked"); *Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 912 (N.D. Cal. 2016) (approving a 100% violation rate for waiting time penalty calculations based on "at all relevant times" language); *Mendoza v. National Vision, Inc.*, No. 19-cv-01485-SVK, 2019 WL 2929745, at *4-6 (N.D. Cal. Jul. 8, 2019) (holding that it was reasonable to assume a 100% violation rate for waiting time penalties due to allegations that the defendant "regularly and consistently" failed to pay overtime wages as part of its "uniform policies and practices"); *Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-CV-00719-NC, 2019 WL 1501576, at *3 (N.D. Cal. Apr. 5, 2019) (finding that claims of a "pattern and practice" of failing to pay class members all final wages supports a 100% violation rate).

34.    Although Defendants could reasonably rely on a 100% violation rate, Defendants instead rely on a reasonable but conservative 20% violation rate because Plaintiff argues that waiting time penalties occurred "at times".  *See* Compl., ¶¶ 18, 61; *see e.g. Santos v. Pictsweet Co.*, No. 2:25-cv-03181-AB-SSC, 2025 WL 2424357, at *5-6 (C.D. Cal. Aug. 20, 2025) (approving full thirty day waiting penalties despite underlying derivative claims being having limiting language of "at times", "some of, but not necessarily all [putative class members]," and "Plaintiff and the Class, or some of them") (collecting cases); *McGill, supra*, 2025 WL 2413970, at *3-4 (C.D. Cal. Aug. 20, 2025) (approving a 20% violation rate where Complaint used "at times" limiting language)(collecting cases); *Jennings v. Northrop Grumman Corp.*, *supra*, 2025 WL 1940576, at *8 (C.D. Cal. July 14, 2025) (finding a 25% waiting time penalty violation rate consistent with "at times").

35. Based on a review of Defendants' business records, during the three-year relevant liability period from August 15, 2022 through July 19, 2025, 6,324 putative class members separated from employment. Lewis Decl., ¶ 10. During the 30 days preceding these putative class members' separation of employment, their shifts averaged 6.47 hours in length and they received a minimum hourly rate of at least $15.40. Lewis Decl., ¶¶ 11-12.

36. Based on a conservative analysis using a 20% violation rate, Defendants' calculation of Plaintiff's claim for waiting time penalties is **at least $3,506,025.60**. The computation of the amount in controversy is based on conservative calculations that during the alleged three-year liability period, 6,324 putative class members separated from employment, they only worked 6 hours per day on average, earned a minimum of $15.40 an hour, and who suffered a 20% violation rate multiplied by 30 days. Lewis Decl.¶¶ 10-12.

37. Consequently, the amount placed in controversy by the Meal Period Claim is at least **$3,506,025.60** (6,324 separated employees x 6 shift length x $15.40 lowest rate of pay x 0.2 violation rate x 30 days of pay).

   **3. The Amount Placed In Controversy By Attorneys' Fees Exceeds $2,411,757.87**

38. Based on the foregoing, Defendants have demonstrated that the aggregate amount of just two of Plaintiff's claims puts an amount in controversy that exceeds **$9,647,031.48**.

39. Plaintiff also seeks to recover attorneys' fees in connection with the above claims. Compl. ¶ 65; Prayer for Relief ¶¶ 19, 29. In the Ninth Circuit, 25% of the total recovery is the "benchmark level" for reasonable attorney fees in class action cases. *Rombaut v. U.S. Concepts LLC*, No. 2:25-CV-02802-AB (EX), 2025 WL 2044670, at *8-9. (C.D. Cal. July 18, 2025) (collecting cases); *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013). Using this 25% benchmark, courts have included attorney fees for 25% of the total recovery in determining the amount in controversy under CAFA. *Rombaut v. U.S. Concepts LLC*, No. 2:25-CV-02802-AB (EX), 2025 WL 2044670, at *8-9. (C.D. Cal. July 18, 2025) (contemplating inclusion of 25% of total recovery in attorney fees under CAFA); *Rwomwijhu v. SMX, LLC*, No. CV160105ABPJWX, 2017 WL 1243131, at *6 (C.D. Cal. Mar. 3, 2017) (including fees in calculation, noting that "courts in the

Ninth Circuit, including this one, have allowed an estimated fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA"); *Sanchez v. Russell Sigler, Inc.*, No. CV-1501350ABPLAX, 2015 WL 12765359, at *7 (C.D. Cal. Apr. 28, 2015) (same). "[W]hen a statute or contract provides for the recovery of attorney fees, prospective attorney fees must be included in the assessment of the amount in controversy." *Arias v. Residence Inn by Marriott, supra*, 936 F.3d at 922 (citing *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 889 F.3d 785, 794 (9th Cir. 2018)).

40. Assuming an award of attorney fees in the benchmark amount of 25% of the total recovery, **the amount in controversy for such fees is $2,411,757.87** [$9,647,031.48 x .25].

### 4. Summary of Defendant's Calculations

41. As described above, a reasonable and conservative estimate of the amount in controversy presented by just two of Plaintiff's claims for unpaid meal period premiums and waiting time penalties and associated attorney's fees far exceeds $5,000,000. Indeed, these claims have placed at least **$12,058,789.35** in controversy, as follows:

| Claim | Estimated Exposure |
| --- | --- |
| Meal Period Premiums | $6,141,005.88 |
| Waiting Time Penalties | $3,506,025.60 |
| **Subtotal** | **$9,647,031.48** |
| Attorneys' Fees | $2,411,757.87 |
| **Total Amount In Controversy** | **$12,058,789.35** |

Consequently, the amount placed in controversy by Plaintiff's claims exceeds the $5,000,000 jurisdictional threshold of 28 U.S.C. § 1332(d).

### 5. Additional Claims Further Increase The Amount

42. For purposes of this removal, the above calculations show at least **$12,058,789.35 in controversy**, which is more than sufficient to support the required $5 million amount in controversy threshold.

43. Nonetheless, Plaintiff also alleges under her First Causes of Action that "Defendants, at times, knowingly failed to pay to Plaintiff and some of, but not necessarily all of, the Class

1  compensation for all hours they worked," which resulted in Defendants failing to pay minimum and straight time wages. Compl. ¶¶ 34-36.

44. Plaintiff also alleges under her Second Cause of Action that "Defendants failed to pay Plaintiff and some of, but not necessarily all of, the Class overtime compensation for the hours they have worked in excess of the maximum hours permissible by law as required by California Labor Code §§ 510 and 1198" and "Defendants' unlawful failure to pay additional premium rate compensation to the Plaintiff and some of, but necessarily all of, the Class for their overtime hours worked, Plaintiff and some of, but not necessarily all of, the Class have suffered, and will continue to suffer, damages in amounts which are presently unknown to them." Compl., ¶¶ 46-47.

45. Here, because Plaintiff has not provided any allegations that could be read to reasonably constrain the potential violation rates for unpaid minimum wages, straight time wages, and overtime wages, Defendants could reasonably rely on a violation rate that would put one additional hour of pay for each category of unpaid wages per each of the 865,736 work weeks during the Applicable Period in the amount in controversy. *Perez*, *supra*, at 808; Lewis Decl., ¶ 9.

46. Additionally, Plaintiff seeks attorneys' fees and costs for bringing her unpaid wage claims, which would also be included in the amount in controversy for purposes of removal. Compl., ¶¶ 41, 49; *see Rombaut, supra*, 2025 WL 2044670, at *8-9.

47. Plaintiff also seeks rest break premiums and attorneys' fees and costs on behalf of the proposed class alleging that "Defendants at times failed to authorize Plaintiff and some of, but not necessarily all of, the Class to take rest breaks, regardless of whether employees worked more than four hours in a workday." Compl., ¶ 57, Prayer for Relief, ¶ 24. As such, Defendants could assume one hour of rest period premiums per workweek as part of the amount in controversy, as well. *Perez, supra*, at 808.

48. Additionally, Plaintiff seeks actual damages, statutory penalties, and attorneys' fees alleging "Defendants have, at times, intentionally and willfully failed to provide employees with complete and accurate wage statements with complete and accurate wage statements." Compl., ¶¶ 68, 72; Prayer for Relief, ¶¶ 32-35.

49. Further, Plaintiff seeks allegedly unpaid reasonable and necessary business expenses

and attorneys' fees and costs pursuant to her Seventh Cause of Action, which further increases the amount placed in controversy. Compl., ¶¶ 76-78; Prayer for Relief, ¶¶ 38, 40.

50.    Finally, Plaintiff seeks statutory penalties for "Defendants' failure to provide Plaintiff with Plaintiff's requested employment records," which Plaintiff alleges, "is not an isolated incident but was instead consistent with Defendants' practice that applied to Plaintiff and some of, but not necessarily all of, the Class." Compl., ¶¶ 85-87; Prayer for Relief, ¶ 43.

51.    For purposes of this removal, the addition of the Plaintiff's additional claims would add additional amounts to the **$12,058,789.35 amount in controversy**, which is more than sufficient to support the required $5 million amount in controversy threshold.

### III.   THIS NOTICE IS TIMELY

52.    The time to remove under 28 U.S.C. section 1446(b)(1) or (3) does not begin to run until receipt by the defendant, through service or otherwise, of a pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005) ("*Harris*"). In *Harris*, the Ninth Circuit held that defendants have no obligation to investigate or develop additional information as to removability. *Id*. at 694 ("[N]otice of removability under 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry" by the defendant). In *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136 (9th Cir. 2013), the Ninth Circuit reinforced its decision in *Harris* regarding the duty to investigate removability, finding that defendants are not "saddl[ed] with the burden of investigating jurisdictional facts" to ascertain removability. *Kuxhausen*, 707 F.3d at 1139.

53.    In *Roth v. CHA Hollywood Med. Ctr.*, L.P., 720 F.3d 1121, 1125 (9th Cir. 2013), the Ninth Circuit affirmed Harris's holding "that a defendant does not have a duty of inquiry if the initial pleading or other document is 'indeterminate' with respect to removability." *Roth* explained that "a defendant who has not lost the right to remove because of a failure to timely file…may remove to federal court when it discovers, based on its own investigation, that a case is removable." *Id*. at 1123. "A CAFA case may be removed at any time, provided that neither of the two thirty-day periods under § 1446(b)(1) and (b)(3) has been triggered." *Id*. at 1126 (emphasis added). Thus, when the complaint

on its own "does not reveal that the case is removable [under CAFA], the 30–day time period never starts to run and the defendant may remove at any time." *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014). Starting the 30-day clock under § 1446(b)(3) is more difficult than under § 1446(b)(1). *Dietrich v. Boeing Company*, 14 F.4th 1089, 1093 (9th Cir. 2021) (recognizing that § 1446(b)(3) "seems to require a greater level of certainty or that the facts supporting removability be stated unequivocally").

54.  Courts within this district have consistently rejected arguments that CAFA removals were untimely in situations where the complaint did not affirmatively allege an amount in controversy or attempted to plead around any specific amount in controversy. *See Amezcua v. CRST Expedited Inc.*, 653 F. Supp. 3d 712, 718-19 (N.D. Cal. 2023) (denying remand even though defendant removed more than two years after the initial pleading and nearly one year after the amended pleading in the action); *Hernandez v. Comcast Corp.*, No. C 14-04575 JSW, 2015 WL 13404296, at *3 (N.D. Cal. Jan. 16, 2015) (denying remand and finding removal timely because "the 30-day period was never triggered because Plaintiff did not allege a clear amount of controversy in any of its complaints").

55.  Other district courts within the Ninth District have ruled similarly. *See e.g., Reyes v. Dollar Tree Stores, Inc.*, 781 F.3d 1185, 1189-90 (9th Cir. 2015) (removal after class certification timely); *Padilla v. APL Logistics Americas Ltd.*, 2024 WL 5057728, at *2 (E.D. Cal., 2024) (denying remand even though defendant removed approximately four months after the filing of the complaint because it did not provide any figures that would enable calculation of an amount in controversy greater than $5 million); *Gutierrez v. Stericycle, Inc.*, No. LA CV15-08187 JAK (JEMx), 2017 WL 599412, at *11-12 (C.D. Cal. Feb. 14, 2017) (finding removal was timely more than a year after the filing of the complaint because the four-corners of the complaint did not trigger a deadline to remove); *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1181 (E.D. Cal., 2020) (concluding removal was timely because the operative complaint did not affirmatively reveal the aggregated amount in controversy); *Taylor v. United Road Services, Inc.*, 313 F. Supp. 3d 1161, 1173 (E.D. Cal., 2018) (concluding removal was timely because complaint was silent as to class members' alleged damages and defendant did not receive such specificity until plaintiff's deposition); *Cantley v. Radiancy, Inc.*,

No. 1:15-cv-1649-LJO-JLT, 2015 WL 13237073, at *3 (E.D. Cal. Dec. 18, 2015) (removal timely one year after initial pleading).

56. Here, it is evident that Defendants could not derive the $5 million amount-in-controversy ("AIC") threshold from the "four corners" of Plaintiff's Complaint. The Complaint does not assert any specific amount of damages. *See generally* Compl. The same is true for its prayer for relief. Compl. at Prayer For Relief. It only alleges that Plaintiff's Second Cause of Action for alleged unpaid overtime wages exceed the minimal jurisdiction limits of the superior court. Compl. ¶ 47. When looking at Plaintiff's causes of action, Plaintiff and putative class members' claims for wages, meal and rest period premiums, statutory penalties, interest, damages and restitution do nothing to articulate an amount in controversy nor do they provide information from which it could be derived. Rather they only state in vague terms Plaintiff and the putative class members are entitled to unpaid minimum, straight time, and overtime wages, unpaid meal and rest period premiums, and unreimbursed business expenses "as may be appropriate," for "all actual damages, according to proof," for alleged inaccurate wage statement penalties, and for unspecified amounts of interest, attorneys' fees and costs, and statutory penalties. *See generally* Compl.; Prayer For Relief. Instead, Plaintiff goes through great pains to obscure potential violation rates and the applicability of the allegations of damages by alleging that violations occurred "at times" and to "some, but necessarily all" of the putative class employees. Compl., ¶¶ 4, 14-19, 20, 34, 45, 53, 57, 61, 68. Thus, the AIC for purposes CAFA removal cannot reasonably be derived from this information and the instant removal is timely.

IV. **DEFENDANTS HAVE SATISFIED THE REMAINING REMOVAL REQUIREMENTS**

57. Venue is Proper. In accordance with 28 U.S.C. § 1446, subdivision (a), this Notice of Removal is filed in the District in which the action is pending. The Superior Court of the State of California for the County of Santa Clara is located within the Northern District of California. Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441, subd. (a).

58. In accordance with 28 U.S.C. § 1446, subdivision (a), copies of all process, pleadings,

and orders served upon Defendants are attached as Exhibits to this Notice.

59. In accordance with 28 U.S.C. § 1446, subdivision (d), a copy of this Notice is being served upon counsel for Plaintiff, and a notice will be filed with the Clerk of the Superior Court of California for the County of Santa Clara. Notice of compliance shall be filed promptly afterward with this Court.

60. As required by Federal Rule of Civil Procedure 7.1, Defendants concurrently filed their Certificate of Interested Parties and Disclosure Statement.

61. Finally, in the event this Court has any question regarding the propriety of this Notice of Removal, Defendants request that the Court issue an Order to Show Cause so that Defendants may have an opportunity to more fully brief the basis for this removal, including with respect to the remaining claims Plaintiff alleged in her Complaint.

WHEREFORE, Defendants remove the above-captioned action to the United States District Court for the Northern District of California.

DATED: October 15, 2025

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Omar M. Aniff
Elizabeth A. Falcone
Matthew J. Gagnon
Omar M. Aniff

Attorneys for Defendants
KINDERCARE EDUCATION LLC and
LEARNING CENTERS LLC